**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF ALASKA**

| | |
|---|---|
| SARA ERICKSON,<br><br>Plaintiff,<br><br>v.<br><br>ALASKIN DERMATOLOGY, LLC, and PATRICK KINNEBREW,<br><br>Defendants. | 3:25-cv-00194-ACP<br><br>**ORDER DENYING PRELIMINARY INJUNCTION**<br>[Dkt. 19] |

Sara Erickson has sold pet treats made from Alaskan fish skins under the federally registered trademark "AlaSkins." The Defendants operate a medical dermatology practice under the name "AlaSkin Dermatology." Erickson contends that the similarity between these names infringes on her trademark, and she now seeks a preliminary injunction prohibiting Defendants from using their name or any similar mark while this litigation proceeds. (Dkt. 19-1 at 1)

There is an obvious similarity between the names, but trademark infringement claims do not turn on similarity alone. Rather, they ask whether consumers are likely to develop "a mistaken belief that the services are, or [are] associated with, the services of another provider." *See Murray v. Cable Nat. Broadcasting Co.*, 86 F.3d 858, 861 (9th Cir. 1996). And on the present record, Erickson has not shown that consumers are likely to associate a business selling fish-skin dog treats with a medical practice providing dermatological care. *See id.* ("If goods or services are totally unrelated, there is no infringement because confusion is unlikely").

Erickson attempts to bridge that gap by arguing that AlaSkins is expanding into skincare products. (Dkt. 41 at 1) But the evidence does not establish a sufficiently concrete expansion to materially change the likelihood-of-confusion analysis. When Erickson filed this motion, she described the skincare product as something she was still "developing." (Dkt. 19-1 at 1) While the skincare theory later became considerably more developed, preliminary relief cannot rest on speculation about where a business may someday expand, particularly where the existing businesses have operated in decidedly different markets for years. *See Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 634 (9th Cir. 2005).

There is another problem. Erickson knew about AlaSkin Dermatology by August 2023. She then waited more than two years before filing this lawsuit and another six months before seeking a preliminary injunction. That delay is difficult to reconcile with her assertion that immediate relief is now necessary to protect her business.

For these and the reasons explained below, Erickson has not demonstrated that she is entitled to the extraordinary remedy of a preliminary injunction. The motion is **DENIED**.

## I. BACKGROUND

Plaintiff Sara Erickson owns a business called AlaSkins, LLC that has made pet treats from wild Alaskan fish skins since 2017. (Dkt. 1 at 4) Erickson also owns the federally registered trademark "AlaSkins," which is registered for edible dog treats. (Dkt. 1-1 at 1) The Defendants own and operate a business providing dermatology and skincare services under the name "AlaSkin Dermatology." (Dkt. 38-1 at 1-2) According to Kinnebrew, AlaSkin Dermatology began operating in 2022. (*Id.* at 13)

Erickson learned about AlaSkin Dermatology in August 2023. (Dkt. 1 at 4) She alleges that, while setting up a booth for AlaSkins at the Alaska State Fair, a woman whose husband was a patient at AlaSkin Dermatology asked whether Erickson knew "they were using [her] name." (*Id.*; Dkt. 38 at 3) Erickson considered Defendants' use of the name an infringement of her trademark but did not file this lawsuit until September 10, 2025, more than two years later. (Dkt. 1)

Erickson moved for a preliminary injunction on March 16, 2026, approximately six months after filing suit. (Dkt. 19) She seeks to enjoin Defendants from using the name "AlaSkin Dermatology" and "any confusingly similar marks" while this litigation proceeds. (Dkt. 19-1 at 1)

Erickson's motion relies principally on the similarity between the parties' names, alleged instances of actual consumer confusion, and her anticipated expansion into skincare products. (*Id.*) In a supporting declaration, Erickson states that customers at her Soldotna store have "repeatedly asked" whether she has an Anchorage location, and again describes the customer, whose husband was a patient at AlaSkin Dermatology, asking whether she knew that AlaSkin Dermatology was using her name. (Dkt. 19-2 at 1) She also states that she is "developing a natural hand cream using oils from the same Alaskan salmon and halibut sources" as her existing products. (*Id.*)

Defendants oppose the motion. (Dkt. 38) They principally argue that Erickson waited too long to seek preliminary relief, that the parties operate in unrelated markets, and that Erickson's alleged instances of customer confusion do not demonstrate actual confusion about the source or affiliation of the parties' businesses. (*See* Dkt. 38)

Defendants also dispute the significance of Erickson's proposed skincare expansion and argue that she had not entered the skincare market when she sought preliminary relief. (*Id.* at 18-21)

Finally, Defendants contend that an injunction would substantially disrupt their existing medical practice. (*Id.* at 25) Kinnebrew states that AlaSkin Dermatology has nearly 5,000 patients and has invested substantial resources to develop its brand over the last four years. (Dkt. 38-1 at 13) He further states that changing names would affect insurance credentialing, patient appointments, ongoing treatments, and referral relationships. (Dkt. 38-1 at 14-15)

## II. LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy" that is never awarded as of right. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 24 (2008). A plaintiff seeking preliminary relief must establish that she is likely to succeed on the merits, likely to suffer irreparable harm without an injunction, that the balance of equities tips in her favor, and that an injunction is in the public interest. *Id.* at 20.

The Ninth Circuit reviews these factors on a sliding scale under which "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction," provided the plaintiff also establishes the remaining *Winter* factors. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). A preliminary injunction requires more than a possibility of irreparable injury. The threatened injury must be likely and sufficiently imminent to warrant intervention before the merits are finally resolved. *See id.* at 1131, 1135; *Winter*, 555 U.S. at 22.

## III. DISCUSSION

### A. Erickson has not established a likelihood of success on the merits.

The first *Winter* factor turns on whether Erickson is likely to succeed on her trademark infringement claim. "The likelihood of confusion is the central element of trademark infringement," and the inquiry asks whether "the similarity of the marks is likely to confuse customers about the source of the products." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000) (quoting *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1391 (9th Cir. 1993)).

To evaluate likelihood of confusion, courts in the Ninth Circuit consider the *Sleekcraft* factors: (1) the strength of the plaintiff's mark; (2) the proximity or relatedness of the goods or services; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) the degree of care likely to be exercised by purchasers; (7) the defendant's intent in selecting the mark; and (8) the likelihood that the parties will expand their product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).

These factors are not a scorecard. Their relative importance depends on the circumstances, and the ultimate inquiry remains whether a reasonably prudent consumer is likely to be confused about the source or affiliation of the parties' goods or services. *See Dreamwerks Production Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998).

The following two logos represent the basic marks at issue here:

The *Sleekcraft* factors point in different directions, but the considerations most probative weigh against finding a likelihood of confusion. To be sure, the parties use a similar word in their respective names. But their existing goods and services are markedly different; the record shows little convergence in their marketing channels; consumers selecting medical care have reason to exercise care; and the evidence of actual confusion is thin. Erickson attempts to overcome these differences principally through her proposed expansion into skincare. As explained below, the present record does not establish a sufficiently concrete expansion to do so.

The similarity of the marks favors Erickson, although not as strongly as she contends. The similarity inquiry considers the marks as a whole as they appear in the marketplace, including their appearance, sound, and meaning. *Brookfield Communications, Inc. v. West Coast Entertainment Group*, 174 F.3d 1036, 1054 (9th Cir. 1999). Similarities are weighed more heavily than differences. *Id.* Here, "AlaSkins" and the first word of "AlaSkin Dermatology" differ only by the final "s." But the Defendants

use the two-word name "AlaSkin Dermatology," not simply "AlaSkin," to identify their medical practice," and Kinnebrew states that Defendants do not market their services under the shortened name "AlaSkin." (Dkt. 38-1 at 16) The addition of "Dermatology" changes the appearance and sound of the mark and, more importantly, gives "AlaSkin" a meaning directly associated with human skin and medical care. The marks remain similar. But they are less so when considered in their entirety.

Visually, the physical marks do not resemblance each other. AlaSkin Dermatology's logo features its name next to a whale tail with a heart inside above a wave. (Dkt. 1-2) AlaSkins' logo, on the other hand, is a large smiling dog behind a fish and "AlaSkins" above the words "Soldotna, Alaska." (Dkt. 1-3 at 1) Small versions of the logo do not even include the fish. (*See* Dkt. 1-4) The physical marks are less similar because people are unlikely to confuse a whale tail for a dog or a fish.[1]

The strength-of-the-mark factor adds little given the thin record at this stage of the case. Erickson emphasizes that "AlaSkins" is federally registered and that she has used the mark since 2017. (Dkt. 19-1 at 1) But neither side meaningfully develops its argument on this point, and Defendants expressly state that its analysis "will not meaningfully add to the discussion." (Dkt. 38 at 12) The factor therefore does not favor either party.

The intent factor does not support Erickson. Kinnebrew declares that the Defendants had never heard of AlaSkins when they chose the name "AlaSkin Dermatology" in 2022.

[1] The whale logo she added to her new skin cream is more similar, though it does not include the word "dermatology." (*See* Dkt. 41 at 8) But as explained below, she created that cream after seeking preliminary relief.

(Dkt. 38-1 at 2-3) Erickson offers no evidence that Defendants knew of her mark when they selected their name. She instead states that she attempted to contact Kinnebrew in 2023 and again in 2025. (Dkt. 19-2 at 1) But even assuming Erickson's version of the facts, her earlier communications occurred *after* the Defendants adopted their mark. Thus, there is no evidence that the Defendants intended to capitalize on AlaSkins brand by using a similar name.

More important is the proximity of the goods and services the parties actually sell. *Sleekcraft* asks whether the goods or services are so related that the buying public could reasonably believe they came from the same source if they were sold under the same mark. 599 F.2d at 348 n. 10. The parties' existing businesses are far apart. Erickson sells edible dog treats made from Alaskan fish skins. Defendants provide medical dermatology services. A person does not expect a dog-treat producer to provide medical care, and a person seeking medical care does not expect to be sold pet products.

The marketing-channel factor likewise provides little support for Erickson. She offers no evidence showing that the parties otherwise market through meaningfully convergent channels. Her declaration identifies a retail store in Soldotna where she sells AlaSkins products. (Dkt. 19-2 at 1) Defendants, by contrast, operate a medical practice whose patients commonly depend on insurance coverage and physician referrals. Kinnebrew states that roughly 97 percent of the practice's patients use private insurance, Medicare, or Medicaid and that "a great deal" of its business comes through referrals from physicians and other medical providers. (Dkt. 38-1 at 10-11) Those are materially different commercial pipelines. And the fact that they have different customer bases is also relevant

to this factor. *POM Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1130 (9th Cir 2014) ("In assessing marketing channel convergence, courts consider whether the parties' customer bases overlap and how the parties advertise and market their products").

The same evidence weighs against Erickson on purchaser care. Medical dermatology is not ordinarily an impulse purchase. Patients are selecting a healthcare provider, often after a physician referral and through an insurance system that requires the provider to be credentialed before covered services can be rendered. (*Id.*) The nature of that transaction gives consumers substantial reason to pay attention to the identity of the provider. *See Sleekcraft*, 599 F.2d at 353.

The evidence of actual confusion is also limited. Erickson states that customers at her Soldotna store have "repeatedly asked" whether she has an Anchorage location and recounts one customer, whose husband was a patient of AlaSkin Dermatology, asking whether Erickson knew "they are using your name." (Dkt. 19-2 at 1) But Erickson provides little information about these encounters, including how many customers made such inquiries, what most of them actually said, or whether they believed the businesses were affiliated.

The one conversation she describes in detail is particularly ambiguous. The customer apparently knew that Erickson and Defendants operated separate businesses and asked Erickson whether she knew that Defendants were using her name. (*Id.*) The Ninth Circuit has held that even "several dozen inquiries" asking whether two businesses were related were, without other evidence, "too ambiguous to demonstrate actual confusion."

*Cohn v. Petsmart, Inc.*, 281 F.3d 837, 842 n.7 (9th Cir. 2002). Erickson's considerably thinner evidence carries little weight here.

Defendants' evidence points the other way. Kinnebrew declares that AlaSkin Dermatology had not encountered any patient or prospective patient mentioning AlaSkins, much less expressing confusion about the two businesses. (Dkt. 38-1 at 8) Actual confusion is not required to establish infringement. *See Sleekcraft*, 599 F.2d at 353. But on this record, the fourth *Sleekcraft* factor does not support preliminary relief.

Erickson's next argument is that the parties will not remain in separate markets because AlaSkins is expanding into skincare. (Dkt. 19-1 at 1) Her motion states that she is "developing hand cream from the same fish oils" used in her existing business and argues that this makes the parties' products sufficiently related. (*Id.*) Her reply goes further, describing an "AlaSkins Arctic Omega Cream" and presenting the skincare venture as a natural extension of the existing fish-skin business. (Dkt. 41 at 1)

The record does not establish that there was a sufficiently strong possibility that either party would expand into the business of the other when Erickson sought preliminary relief. And it still does not today.

When the motion was filed on March 16, 2026, Erickson described the hand cream as something she was still "developing." (Dkt. 19-1 at 1) Ten days later, AlaSkins, LLC filed a new trademark application that included non-medicated skincare preparations. (Dkt. 38-4 at 1) The skincare class was asserted on an intent-to-use basis under 15 U.S.C. § 1051(b), while the same application included an existing pet-treat class supported by a specimen of use. (Dkt. 38-4 at 1-2) That distinction is meaningful. As to skincare, the

application asserted a bona fide intention to use the mark in commerce for future products, but it does not establish that AlaSkins was already using the mark for skincare products. Defendants relied on precisely that distinction in opposing the injunction. (Dkt. 38 at 7-8, 14)

The chronology matters. Erickson's federally registered mark has been used for pet treats since 2017. (Dkt. 19-2 at 1) Her own preliminary-injunction papers described the proposed hand cream as under development, and the trademark application filed ten days later treated skincare as a future use. The more developed presentation of an Arctic Omega Cream appeared later in reply. All of this occurred after AlaSkin Dermatology began operations. On this record, Erickson has not made a sufficient showing of expansion into skincare as a commercial product line when she sought preliminary relief. While she calls skin cream a "natural zone of expansion" for her business, her only evidence is three Icelandic companies who share her "100% Fish philosophy" that have developed fish-based skin products. (*See* Dkt. 41 at 2) This is not enough to establish a likelihood of expansion.

That does not mean AlaSkins could never expand into skincare. Businesses evolve. Nor is it necessary to decide whether AlaSkins, LLC may ultimately obtain enforceable trademark rights for skincare products. The narrower point is enough. The eighth *Sleekcraft* factor requires a strong possibility of expansion, and the present record does not establish a sufficiently concrete expansion to materially narrow the considerable distance between a pet-treat business and a medical dermatology practice. *See Sleekcraft*, 599 F.2d at 354.

Even the proposed skincare product would not place the parties in direct competition on the record now before the Court. Kinnebrew declares that AlaSkin Dermatology does not manufacture or sell hand creams or other skincare products. (Dkt. 38-1 at 16) Erickson's proposed cream may bring her business somewhat closer to the general subject matter of skincare, but that does not itself make a retail skincare product and medical dermatology services similar. The relevant question remains whether consumers are likely to believe the goods and services come from the same source. And on this record, there is no reason to believe that a consumer would believe that they do.

Taken together, these considerations do not show that Erickson is likely to establish consumer confusion. The similarity of the marks weakly favors her. But the parties' existing goods and services are substantially removed from one another, the record does not show meaningful convergence in their marketing channels, consumers selecting medical care have substantial reason to exercise care, and Defendants' evidence of innocent adoption is unrebutted. The evidence of actual confusion is limited. And the proposed skincare expansion, which might otherwise narrow the distance between the parties' businesses, remained prospective when Erickson sought preliminary relief and only occurred after AlaSkin Dermatology opened its doors.

Similarity matters. But it is not enough by itself. Considering the *Sleekcraft* factors as a whole, Erickson has not established a likelihood of success on the merits.

**B. Erickson has not established a likelihood of irreparable harm.**

The absence of likely success on the merits affects the second *Winter* factor. The Lanham Act provides a rebuttable presumption of irreparable harm upon a finding that a

plaintiff is likely to succeed on the merits when seeking a preliminary injunction. 15 U.S.C. § 1116(a). Because Erickson has not made that threshold showing, the statutory presumption does not arise. Thus, Erickson must independently establish that irreparable injury is likely without preliminary relief. *Winter*, 555 U.S. at 22. Speculative injury or the possibility of harm at some indefinite future time is insufficient. *Caribbean Marine Services Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988).

The record does not establish such an injury. Erickson principally alleges ongoing harm to her goodwill from consumer confusion, particularly as she expands into skincare. But the evidence of existing confusion is limited for the reasons already explained. And although Erickson may eventually enter the skincare market, the record does not establish that Defendants' continued use of their name presently threatens her established business.

Erickson's delay presents a more fundamental problem. She learned of AlaSkin Dermatology in August 2023 but did not file this lawsuit until September 2025, more than two years later. (Dkt. 1 at 4; Dkt. 38 at 3) She then waited another six months before seeking a preliminary injunction. (*See* Dkt. 19 at 2) Delay does not necessarily defeat her trademark claim on the merits, and it is unnecessary to decide Defendants' laches argument at this stage. But the delay bears directly on whether the threatened injury is sufficiently imminent to require preliminary relief. *See Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985).

For more than two years after Erickson learned of AlaSkin Dermatology, the parties continued operating under their respective names. The record does not identify an intervening event that suddenly made Defendants' continued use of the name an imminent

threat requiring emergency relief. The proposed skincare expansion does not fill that gap because, when Erickson moved for an injunction, the product line remained prospective, and she has not shown that there was a strong possibility that she would expand into skincare. Erickson has therefore not established a likelihood of irreparable harm.

**C. The balance of equities and public interest also weigh against an injunction.**

The remaining *Winter* factors point in the same direction. Erickson argues that Defendants are junior users and therefore cannot rely on hardships resulting from their continued use of an infringing mark. (Dkt. 19-1 at 1) But that argument assumes the point she has not established: that Defendants' use is likely infringing.

The consequences of preliminary relief would be substantial. AlaSkin Dermatology has operated under its present name since 2022 and now serves thousands of patients. (Dkt. 38-1 at 13) Kinnebrew states that the practice has invested in signage, branding, referral relationships, and insurance credentialing under that name. (*Id*. at 10-15) He further states that changing the practice's name would require changes to signage, its website and promotional materials, billing and referral systems, and insurance credentialing. (*Id*.)

Defendants also contend that disruption to insurance credentialing could affect their ability to treat patients while a name change is processed. (*Id*. at 14-15) It is not necessary to conclude that every consequence Defendants predict would necessarily follow from the injunction Erickson requests. The evidence is enough to establish that forcing an operating medical practice to abandon its established name during this litigation would impose significant practical and financial burdens.

The hardship on Erickson is considerably less immediate. She allowed Defendants to continue using the name for more than two years after learning of it before filing suit and then waited another six months to seek preliminary relief. Meanwhile, her existing business remains centered on pet treats, and the record does not establish that Defendants' continued use of "AlaSkin Dermatology" is presently threatening an established skincare business or encroached into a field that she was likely to expand into during litigation.

The public interest likewise does not favor preliminary relief on this record. The public has an interest in preventing consumer confusion. But Erickson has not shown that such confusion is likely. The public also has an interest in avoiding unnecessary disruption to an operating medical practice. Where the likelihood of confusion has not been established, that consideration weighs against requiring Defendants to change their public identity before the merits are resolved.

The balance of equities and public interest therefore weigh against an injunction.

## IV. CONCLUSION

There is no question that "AlaSkins" and "AlaSkin Dermatology" are similar names. But trademark law asks a different question: whether consumers are likely to believe the parties' goods or services come from the same source. On the present record, Erickson has not shown that they are.

The parties' existing businesses occupy substantially different markets, the evidence of actual confusion is limited, and Erickson's proposed expansion into skincare was still prospective when she sought preliminary relief and only occurred after AlaSkin Dermatology opened. Erickson also waited more than two years after learning of AlaSkin

Dermatology before filing suit and another six months before requesting an injunction. On the other hand, preliminary relief would impose substantial burdens on an established medical practice while this case remains unresolved.

A preliminary injunction is an extraordinary remedy. *Winter*, 555 U.S. at 22, 24. Erickson has not established a likelihood of success on the merits, a likelihood of irreparable harm, or that the balance of equities and public interest favor immediate relief. The motion for preliminary injunction at Docket 19 is therefore **DENIED**.

IT IS SO ORDERED.

DATED September 16, 2026, at Anchorage, Alaska.

*/s/ Aaron Christian Peterson*
Aaron Christian Peterson
United States District Judge